IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STEVEN ZALKIN, | CASE NO. 8:09CV96 |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| COVENTRY HEALTH CARE OF NEBRASKA, INC., | |
| Defendant. | |

This matter is before the Court on the Defendant's Statement of Objections to Magistrate Judge's Order (Filing No. 32). Defendant Coventry Health Care of Nebraska, Inc. ("Coventry"), objects to the Memorandum and Order of Magistrate Judge Gossett (Filing No. 28, "M&O"), in which he permitted Plaintiff Steven Zalkin ("Zalkin") to serve certain discovery requests to gather information about possible structural conflicts of interest that may have affected Coventry's decision to deny Zalkin's request for a specific medical treatment.

After considering Zalkin's original Motion for Leave to Conduct Discovery (Filing No. 25), his Brief in Support of the Motion (Filing No. 26), Coventry's Brief in Opposition to the Motion (Filing No. 27), Coventry's Objections (Filing No. 32), Coventry's Brief in Support of its Objections (Filing No. 33, "Coventry Brief,"), Coventry's Index of Evidence in Support of its Objections (Filing No. 34), and the M&O, this Court concludes that the M&O was not clearly erroneous nor contrary to law, and Coventry's Objections will be denied.

**FACTUAL AND PROCEDURAL SUMMARY**

Judge Gossett's M&O contains a detailed statement of facts, with citations to the record. (Filing No. 28, pp. 1-9.) Summarized and condensed, Zalkin has Castleman Disease, a rare aggressive multisymptom disorder that resembles lymphoma, and for which there is no standard treatment. Coventry at all relevant times was his health

insurance carrier. In May 2008, Zalkin sought preauthorization from Coventry for chemotherapy, followed by a stem cell transplant. Coventry denied coverage for the treatment. Zalkin's physician appealed the denial, presenting Coventry with peer review literature demonstrating that such a regimen was the treatment most likely to result in a durable remission of Castleman Disease. Zalkin exhausted all his appeals and administrative remedies, and Coventry declined coverage on the basis that the treatment was "experimental and investigational," and not covered under Zalkin's policy. In support of its conclusion, Coventry relied on the opinions of certain consulting physicians, who appear to have worked through an organization referred to in the administrative record as "mcmc."

Zalkin filed this action in state court, seeking a declaratory judgment regarding his right to coverage for the treatment, and judgment in the amount of $126,322.00, representing the amount he allegedly expended for the treatment, plus general damages, and attorney fees and costs, all under common law theories of liability. Coventry removed the action to this Court, and Zalkin's claims are now considered as ones for equitable relief under "ERISA"[1] at 29 U.S.C. § 1132(a)(1)(B). (*See* Memorandum and Order, Filing No. 18.)

Zalkin moved to conduct discovery outside the administrative record in seven specific areas, all generally related to the question of whether Coventry's denial of insurance coverage was influenced by a structural conflict, *i.e.*, Coventry's role as both the entity determining eligibility for benefits and the entity making payment of any benefits.

Although this factual and procedural summary is not in dispute, Coventry does take exception to Judge Gossett's reference to Coventry's administrative record as

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 to 1461.

"unauthenticated, unindexed documents . . . some of which were redacted" (M&O at 1, n.1), and to his suggestion that Coventry "has not clearly identified all of the applicable 'plan documents,'" (*id*. at 10, n.3.) Coventry also takes exception to Judge Gossett's conclusion that the qualifications and independence of the physicians on whom Coventry relied, and of the organization through which such doctors worked, were not disclosed or established in the administrative record. (*Id.* at 13-14.) Coventry asserts that it produced its entire administrative record of Zalkin's claim for insurance coverage, with the exception of attorney-client privileged material (Coventry Brief at 7-8); that the administrative record includes the applicable plan documents (*id*. at 11); and that the independence of the physicians on whom it relied was substantiated in the administrative record (*id*. at 8-9). Coventry contends, therefore, that judicial review of its decision to deny benefits should be limited to the examination of the administrative record created during its decision-making process. Coventry also contends that "to the extent" Judge Gossett based his decision on the "reasonableness" of the treatment requested, that was error, because the question at issue was whether the treatment was "experimental or investigational." (*Id.* at p. 11.)

## STANDARD OF REVIEW

Upon a party's timely objection to a magistrate judge's order on a non-dispositive matter, a district judge must consider the objection and "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

## DISCUSSION

Coventry argues that "[e]xtensive discovery . . . is strongly discouraged in ERISA cases" (Coventry Br. at 2), but bases that argument on case law that pre-dates *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008). *Glenn* "held that a reviewing court should consider the conflict of interest arising from the dual role of an entity as an

ERISA plan administrator and as a payer of plan benefits, in determining whether the entity has abused its discretion in denying benefits." *Schultz v. Windstream Communications, Inc.*, No. 09-2125, 2010 WL 1266858 at *2 (8th Cir. Apr. 5, 2010) (citing *Glenn,* 128 St. Ct. at 2346). "Under *Glenn*, courts must analyze the facts of the case at issue, taking into consideration not only the conflict of interest, but also other factors that might bear on whether the administrator abused its discretion." *Chronister v. Unum Life Ins. Co.*, 563 F.3d 773, 775 (8th Cir. 2009). While is it not clear that the holding in *Glenn* changed the discovery limitations in ERISA cases, it is far form clear that it did not. *Id*. at 775 n.2. For example, a company's history of biased claims administration may be relevant to determining whether the insurer abused its discretion. *Jones v. Unum Provident Corp.*, 596 F.3d 433, 438 (8th Cir. 2010). It is difficult to perceive how a plaintiff could offer such facts, relevant to questions of the insurer's possible conflict of interest and abuse of discretion, without discovery beyond the administrative record of the claim itself.

Coventry's criticism of Judge Gossett's findings of fact concerns matters that are peripheral to Judge Gossett's conclusion. Even if Coventry's administrative record is considered to be flawless, it was not clearly erroneous nor contrary to the current status of the law for Judge Gossett to permit Zalkin to engage in limited discovery regarding Coventry's possible structural conflicts, including inquiry about the independence and qualifications of the reviewing physicians.

Finally, this Court does not interpret Judge Gossett's M&O as opening discovery on the question of the "reasonableness" of the treatment, but simply as allowing limited discovery to determine whether a structural conflict caused Coventry to abuse its discretion by classifying the proposed treatment as "experimental or investigatory."

4

IT IS ORDERED:

1. The Defendant's Statement of Objections to Magistrate Judge's Order (Filing No. 32) is denied; and

2. The Magistrate Judge's Memorandum and Order (Filing No. 28) is affirmed.

DATED this 22nd day of April, 2010.

                              BY THE COURT:

                              s/Laurie Smith Camp
                              United States District Judge